ATTORNEYS FOR APPELLANTS
Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court



FILED
Feb 17 2017, 12:39 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

_____

No. 54S01-1612-JT-630

IN THE MATTER OF THE TERMINATION OF THE
PARENT-CHILD RELATIONSHIP OF
BI.B. AND BR.B.,

D.B. AND V.G.,

*Appellants (Defendants below),*

v.

INDIANA DEPARTMENT OF CHILD SERVICES,

*Appellee (Plaintiff below).*

_____

Appeal from the Montgomery Circuit Court, Nos. 54C01-1510-JT-246 through 54C01-1510-JT-250
The Honorable Harry A. Siamas, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 54A01-1603-JT-607

_____

**February 17, 2017**

**Rush, Chief Justice.**

Few liberties are as central to our society as the right of parents to raise their children. Our General Assembly has thus set a high bar for terminating parental rights—requiring a termination petition to allege four defined elements and commanding dismissal when DCS fails to prove each element by clear and convincing evidence.

The first required element establishes three waiting periods to give parents time to reunify with their children, and bars DCS from seeking termination until one of those three periods has passed. Here, DCS failed to allege the only one of those waiting periods that had in fact passed—that Father's daughters had been removed from him for at least six months under a dispositional decree. Finding this missing element fatal to DCS's petitions to terminate Father's parental rights, we reverse and remand.

## Facts and Procedural History

D.B. (Father) and V.G. (Mother) lived in Montgomery County with five young children: their two daughters, Bi.B. and Br.B., and Mother's three sons from a prior relationship. In April 2014, the Indiana Department of Child Services (DCS) learned that the parents were using methamphetamine and leaving the children unsupervised in their trash-ridden house. Soon after, on DCS's petitions, the court found that the children were in need of services (CHINS).

Then on July 14, 2014, DCS removed the children due to the parents' domestic violence, lack of supervision, and continued methamphetamine use. The next month, the trial court's modified dispositional order approved that removal and required the parents to participate in various services, including drug treatment and supervised visitation. But their participation in services was sporadic, and on October 9, 2015, DCS petitioned for termination of parental rights (TPR).

DCS's petitions regarding Bi.B. and Br.B. addressed, among other things, the statutory requirement that at least one of three waiting periods had passed. Specifically, DCS alleged that the second and third waiting periods applied:

(ii)     A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii)     The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child.

DCS did not, however, allege the first waiting period applied—that "[t]he child has been removed from the parent for at least six (6) months under a dispositional decree." Ind. Code § 31-35-2-4(b)(2)(A)(i) (Supp. 2012).

At the consolidated evidentiary hearing on the petitions, Father argued that DCS failed to prove the two periods it alleged and failed to allege the one period it could have proved. First focusing on subsection (iii), he argued that DCS filed the petitions five days short of the fifteen-month anniversary of the girls' removal—noting the girls were removed on July 14, 2014, and the petitions were filed on October 9, 2015. And Father added that DCS failed to allege the only applicable statutory waiting period—that the girls had been removed from him for at least six months under a dispositional decree. Nonetheless, the trial court granted DCS's termination petitions, expressly finding that DCS proved both the six-month and fifteen-month waiting periods.

Father and Mother appealed termination of their rights as to their daughters, both parents arguing DCS failed to allege an applicable waiting period, and Father also arguing insufficient evidence supported termination. The Court of Appeals affirmed in a unanimous opinion, recognizing that neither of the waiting-period allegations in the petitions were true, but finding the error harmless because the parents showed no prejudice. D.B. v. Ind. Dep't of Child Servs., 61 N.E.3d 364, 372 (Ind. Ct. App. 2016). It then held that ample evidence supported a reasonable probability that the conditions resulting in the girls' removal would not be remedied. Id. at 375.

Only Father sought transfer—and only as to DCS failing to prove the alleged waiting periods. We granted his petition, vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).[1]

## Standard of Review

The parties dispute the interpretation of the statutory waiting-period requirements—a question of law reviewed de novo. See Buelna v. State, 20 N.E.3d 137, 141 (Ind. 2014). Once we resolve that issue, we can decide whether the evidence clearly and convincingly supported the

---

[1] Because Mother did not seek transfer, we summarily affirm the Court of Appeals disposition—though not its reasoning—as to her appeal. App. R. 58(A)(2).

findings and whether the findings clearly and convincingly supported termination. In re E.M., 4 N.E.3d 636, 642 (Ind. 2014).

## Discussion and Decision

The parties dispute whether DCS complied with the termination of parental rights statutes,[2] and—if it did not—whether the trial court's error in finding compliance was harmless.

### I. DCS Neither Proved the Two Statutory Waiting Periods It Alleged, Nor Alleged the One It Could Have Proved.

As this Court and the United States Supreme Court have reiterated many times, the right of parents to raise their children is "perhaps the oldest of the fundamental liberty interests." Bester v. Lake Cty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005) (quoting Troxel v. Granville, 530 U.S. 57, 65 (2000)). Though parental rights are not absolute—yielding as they must to a child's best interests—they do occupy a "preferred position" among our freedoms. In re C.G., 954 N.E.2d 910, 916 (Ind. 2011) (quoting Moore v. City of E. Cleveland, 431 U.S. 494, 511 (1977) (Brennan, J., concurring)). Indiana law has accordingly established a "high bar" for the termination of parental rights. In re R.S., 56 N.E.3d 625, 628 (Ind. 2016).

By statute, termination of parental rights requires DCS to prove four elements—and also to allege them from the outset in its petition. See I.C. §§ 31-35-2-4(b), -2-8(b). The first element, sometimes called the "waiting period," takes center stage here.[3] The waiting period affords parents

---

[2] DCS's position on this issue is unclear. At some points, DCS argues its petitions complied with the statutes because the Indiana Trial Rules excuse its failure to allege the six-month waiting period. But at other points, DCS seems to concede noncompliance, arguing the error was harmless because the hearing was fair. We address both possibilities.

[3] The other three elements—undisputed here—are as follows:

> (B) that one (1) of the following is true:
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
> (C) that termination is in the best interests of the child; and
> (D) that there is a satisfactory plan for the care and treatment of the child.

I.C. § 31-35-2-4(b)(2)(B)–(D).

the opportunity to reunify with their children by requiring DCS to wait one of three periods before seeking termination. It provides,

> (2) The [termination] petition *must* allege:
>> (A) that one (1) of the following is true:
>>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>>
>>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>>>
>>> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child[.]

I.C. § 31-35-2-4(b)(2)(A) (emphasis added). And if the "court does not find that the allegations in the petition are true, the court *shall* dismiss the petition." I.C. § 31-35-2-8(b) (emphasis added).

The parties agree that subsection (ii) does not apply here, so they focus on the other two subsections—whether DCS *proved* the fifteen-month basis in subsection (iii) and whether DCS *alleged* the six-month basis in subsection (i). Guided by the statute's plain language—the "best evidence" of the legislature's intent, Adams v. State, 960 N.E.2d 793, 798 (Ind. 2012)—we agree with Father that DCS fell short in both regards.

### A. DCS failed to prove the fifteen-month waiting period had passed.

First, the parties dispute whether DCS proved the fifteen-month basis because they disagree on *when* that threshold must be met. Father says the fifteen months must have passed when the petition is *filed*, making this particular allegation five days too early. But DCS says those months need only have passed by the *evidentiary hearing*, which here came well after the fifteen-month mark. Based on the statute's plain language, Father is right.

By using the present tense, not the future, the statute plainly requires that the petition's fifteen-month allegation be true when the petition is filed: "The petition must allege that [the fifteen-month basis] *is* true." I.C. § 31-35-2-4(b)(2)(A) (emphasis added). The word "is" naturally

refers to what exists when the allegation is made—that is, the time of filing—not what *will* exist at an evidentiary hearing down the road.

Indeed, longstanding precedent has held just that. See In re Q.M., 974 N.E.2d 1021, 1025 (Ind. Ct. App. 2012); In re K.E., 963 N.E.2d 599, 602 (Ind. Ct. App. 2012); In re D.D., 962 N.E.2d 70, 74 (Ind. Ct. App. 2011); Platz v. Elkhart Cty. Dep't of Pub. Welfare, 631 N.E.2d 16, 18 (Ind. Ct. App. 1994). In Platz, for example, the Department of Public Welfare made the same argument: that termination was permissible even though it filed the petition fewer than six months after removal, because six months had elapsed by the hearing date. 631 N.E.2d at 18. Then-Judge Rucker disagreed on behalf of a unanimous panel, reversing TPR because the six-month basis must be true "at the time the petition was filed." Id. We agree and find DCS's argument equally unpersuasive today.

*B. DCS failed to allege the one period that could apply—the six-month basis.*

Second, the parties disagree whether we should excuse DCS's failure to allege the six-month waiting period in its petitions. Father argues that the omission was fatal, pointing to the statute's command "*must* allege." See I.C. § 31-35-2-4(b)(2) (emphasis added). But DCS asserts that it was excusable, relying on the Trial Rules to argue that Father impliedly consented to the six-month basis and that the petitions should be liberally construed to include that basis. Father prevails, again based on the statute's plain language.

The statute's requirement to allege an applicable waiting period is absolute: "The petition *must* allege . . . that one (1) of the following is true: (i) The child has been removed from the parent for at least six (6) months under a dispositional decree . . . ." I.C. § 31-35-2-4(b)(2)(A) (emphasis added). "Must" is mandatory language; it leaves no room for good-faith omissions—even when, as here, the six-month basis would in fact apply. And contrary to the liberal construction DCS urges, Indiana precedent has repeatedly read the statute to demand "strict compliance." In re J.S., 906 N.E.2d 226, 235 (Ind. Ct. App. 2009); see also In re B.F., 976 N.E.2d 65, 67 (Ind. Ct. App. 2012); In re Q.M., 974 N.E.2d at 1024; In re K.E., 963 N.E.2d at 601; In re D.D., 962 N.E.2d at 73; A.P. v. Porter Cty. Office of Family and Children, 734 N.E.2d 1107, 1118 (Ind. Ct. App. 2000); Platz, 631 N.E.2d at 18. We see no reason to deviate today.

Nor do our Trial Rules give us leeway to gloss over this omission. DCS first asks us to find that Father "implied[ly] consent[ed]" to proceeding under the six-month basis within the meaning of Trial Rule 15(B): "When issues not raised by the pleadings are tried by express or *implied consent* of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Ind. Trial Rule 15(B) (emphasis added). But Father expressly objected in closing argument that "the petition does not allege the six month" basis. We cannot find consent, implied or otherwise, on this record.

Next, DCS asks us to construe the petitions liberally to include the missing six-month element in light of Trial Rule 8(F): "All pleadings shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points." T.R. 8(F). But we decline that request as well. While courts do construe pleadings, they do not rewrite them— particularly when doing so would bypass a statutory mandate.

In sum, since DCS failed to allege the only waiting period that applied, the trial court erred in terminating Father's parental rights. We next address whether that error was harmless.

## II. Terminating Father's Parental Rights Despite DCS's Failure to Allege an Applicable Waiting Period Requires Reversal.

Father argues that granting these defective termination petitions was reversible error because the statute's plain language requires dismissal. DCS disagrees, arguing that Father was not prejudiced. Resorting once again to statutory plain-meaning analysis, we agree with Father.

The TPR statutes do not just prescribe what termination petitions must allege; they also tell courts what to do when the allegations are not true. Indiana Code section 31-35-2-8(b) provides, "[i]f the court does not find that the allegations in the petition are true, the court *shall* dismiss the petition." I.C. § 31-35-2-8(b) (emphasis added). Like "must," "shall" is mandatory, and we cannot engraft qualifying language onto that directive. See Jackson v. State, 50 N.E.3d 767, 769 (Ind. 2016). The General Assembly chose not to say, "the court shall dismiss the petition *unless DCS proves every required element anyway.*" In sum, because DCS failed to prove the alleged waiting-period element, the trial court was required to dismiss the petitions.

We realize that DCS's failure to allege the six-month waiting period was likely a mere drafting error. But a statutory requirement—even one that seems minor or technical—is still a requirement. And here, where that requirement protects the fundamental rights of parents, it takes on particular importance. Terminating Father's parental rights in spite of this pleading defect therefore requires reversal.

## Conclusion

DCS failed to prove the waiting periods it alleged and failed to allege the waiting period it could have proved. We thus reverse the termination of Father's parental rights regarding his daughters, Bi.B. and Br.B., and remand for further proceedings consistent with this opinion.

Rucker, David, Massa, and Slaughter, JJ., concur.