

FILED

May 27 2020, 10:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone, IV
Anderson, Indiana

ATTORNEY FOR APPELLEE

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Termination of the Parent-Child Relationship of: Tre.S. and Tra.S. (minor children) and A.S. (Mother) <br><br> A.S. (Mother), <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Indiana Department of Child Services, <br><br> *Appellee-Petitioner* | May 27, 2020 <br><br> Court of Appeals Case No. 19A-JT-2915 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable George Pancol, Judge <br><br> Trial Court Cause Nos. 48C02-1904-JT-191 48C02-1904-JT-192 |

**Vaidik, Judge.**

## Case Summary

[1]     A.S. ("Mother") appeals the termination of her parental rights to her children, arguing that her due-process rights were violated when the trial court denied her

attorney's emergency motion to continue and held the termination hearing without her attorney present. The State concedes that Mother's due-process rights were violated. We reverse the termination order and once again remind trial-level DCS attorneys and trial courts that they have a duty to ensure that parents' due-process rights in termination cases are not violated.

# Facts and Procedural History

On May 2, 2019, DCS filed petitions to terminate Mother's parental rights to her children, Tre.S. and Tra.S. Thereafter, the trial court appointed counsel for Mother and set the fact-finding hearing for October 1. At some point, however, DCS asked the court to move the hearing forward because the pre-adoptive parents "were hoping to be able to get the matter resolved prior to October first[.]" Tr. p. 24.[1] On August 6, the trial court rescheduled the hearing to August 21 at 1:30 p.m. Appellant's App. Vol. II p. 3. The CCS does not indicate whether Mother or her attorney were notified of this change at that time. Two days later, on August 8, DCS served Mother with the "10-day" notice of the termination hearing required by Indiana Code section 31-35-2-6.5(c)(1). *Id.* The CCS doesn't indicate whether the ten-day notice was sent to Mother's attorney, which Section 31-35-2-6.5(c)(2) requires. *See id.*

---

[1] The record does not indicate how or when DCS asked the court to change the date of the hearing.

[3] At 1:17 p.m. on August 21, Mother's attorney filed an Emergency Motion for Continuance. *Id.* at 81. Specifically, Mother's attorney alleged that she believed the hearing was still set for October 1 and that she was at an all-day mediation training and couldn't attend the hearing. *Id.* When the hearing started at 1:30 p.m., neither Mother nor her attorney was present. The trial court asked DCS what it thought about Mother's motion to continue, and DCS said it objected to a continuance. Tr. p. 22. The following exchange then occurred:

> THE COURT: Okay uhm I assume what would happen then is if I go ahead and the counsel is not here that we are going to get a uhm a due process, have a due process issue, do you agree with that?
>
> [DCS]: I do. I don't like to agree to it, with it but I do agree with you.
>
> * * * * *
>
> THE COURT: Unfortunately if we don't have the attorney here and we proceed I'm fairly confident that the appellate court is going to give her a new hearing so I'm going to have to continue it to October first . . . .

*Id*. at 22-24. However, when DCS said October 1 wouldn't work because the family case manager would be on vacation, the court queried, "Mother fails to appear having good notice, ten day notice, why can't we just default her today?" *Id.* at 24. DCS confirmed that Mother had notice. The court then said if DCS was "comfortable" proceeding with the hearing that day, then it would allow DCS to do so. *Id.* at 25. DCS responded that it was comfortable

proceeding that day. The court then conducted the hearing without Mother or her attorney present and later entered an order terminating Mother's parental rights.

[4] Mother appealed and filed an appellant's brief, arguing that her due-process rights were violated when the trial court denied her attorney's emergency motion to continue and held the hearing without her attorney present. DCS moved to remand, conceding that Mother's due-process rights were violated because she "was effectively denied representation by counsel when the court denied the emergency motion to continue, proceeded with the trial, and terminated Mother's parental rights." *Verified Motion to Remand*, No. 19A-JT-2915 (Mar. 5, 2020). Accordingly, DCS asked this Court to dismiss the appeal without prejudice, set aside the trial court's termination of Mother's parental rights, and remand the case to the trial court. Our motions panel denied DCS's motion to remand and ordered it to file an appellee's brief. DCS then filed an appellee's brief in which it again conceded that Mother's due-process rights were violated and asked us to reverse the trial court and remand the case for further proceedings. *See* Appellee's Br. p. 13.

## Discussion and Decision

[5] In July 2018, this Court issued an order noting that in the previous six months, DCS had moved to remand ten termination cases. *See Order*, No. 18A-JT-527 (July 9, 2018). As we explained it, "The motions are always filed after Appellant has filed their brief. In these motions, DCS essentially concedes that

Appellant has either not been provided with adequate notice or that their due process rights have been violated. DCS then . . . requests that the matter be remanded to the trial court for further proceedings consistent with due process." We continued:

> It is not clear why DCS has suddenly chosen to file motions to remand in these cases rather than file a brief. The result of this, though, is that the Court has primarily dealt with these issues through its orders and not in a formal opinion. While the orders of this Court carry weight, they do not carry the weight or the effect that an opinion from this Court does. By filing a motion to remand, DCS has successfully avoided defending repeated, significant violations of due process in termination of parental rights cases.
>
> The increasing frequency of these motions suggest that there are repeated, significant violations of due process occurring in termination of parental rights cases throughout this state. This is a disturbing trend given the fundamental rights at issue in these types of cases. *See In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014) (noting that the Fourteenth Amendment to the United States Constitution protects the rights of parents to establish a home and raise their children, that parents have a fundamental liberty interest in the care, custody, and control of their children, and that the parent-child relationship is one of the most valued relationships in our culture).

*Id.* While we commended DCS for conceding error, we said we were "obligated to formally admonish DCS for its failure to afford litigants throughout this state the due process rights they are owed." *Id.* We also reminded "the trial courts throughout this state of their duty to ensure that litigants' due process rights are

not violated." *Id.*; *see also In re J.K.*, 110 N.E.3d 1164, 1166 (Ind. Ct. App. 2018).

[6] Nearly two years after we issued this order, DCS continues to file motions to remand conceding that parents' due-process rights have been violated. This unfortunately means that throughout this state, there continues to be significant violations of parents' due-process rights in termination-of-parental-rights cases. This case is just one example. The trial court set the termination hearing for October 1, but the case was moved up because the pre-adoptive parents wanted it finalized sooner. On August 6, the court rescheduled the hearing for approximately two weeks later, August 21. On the day of the hearing, Mother's attorney filed an emergency motion to continue because she thought the hearing was still set for October 1 and was at an all-day mediation training. Indeed, the record is unclear whether Mother's attorney was even notified of the August 21 hearing date. The court denied the motion to continue and held the hearing without Mother or her attorney present, knowingly disregarding Mother's rights. Both the court and DCS knew that they were committing due-process violations and proceeded with the hearing anyway. This must stop. We therefore reverse the termination order and issue yet another reminder to trial-level DCS attorneys and trial courts that they have a duty to ensure that parents' due-process rights in termination cases are not violated.

[7] Reversed and remanded.

May, J., and Robb, J., concur.